Joseph Mulhall, Appellant, *v*. Stephen L. Cheatham *et al.*, Respondents.

March 21, 1876.

One partner cannot sue another at law respecting a matter arising out of an unsettled partnership account.

Appeal from St. Louis Circuit Court.
*Affirmed*.

*H. B. O'Reilly*, for appellant, cited: Moffatt *v*. Conklin, 35 Mo. 453; Camp *v*. Hulan, 43 Mo. 591; Wag. Stat. 1040, sec. 11; 3 Kent's Com. (10th ed.) 27; Freeman *v*. Bloomfield, 43 Mo. 391.

*Irwin Z. Smith*, for respondents.

Gantt, P. J., delivered the opinion of the court.

Mulhall sued Cheatham and Kelly to the February term, 1873, of the St. Louis Circuit Court (charging them as copartners under the name of S. L. Cheatham), for the sum of $1,816.25, the balance due him of cash advances, upon the order and at the request of defendants, upon shipments of stock, made and consigned by defendants to plaintiff, within the last three months, as will more fully appear by the itemized account thereof filed with the petition.

Annexed to the petition is an account between S. L. Cheatham and Mulhall, commencing on November 12, 1872, and closing on January 9, 1873, showing a balance to the credit of Mulhall of $1,816.25.

The defendants answered that they were partners, and that Mulhall was a member of the firm; that the object of the partnership was the purchase and sale of hogs and other live stock; that no written articles were executed, but it was agreed that Mulhall was to furnish money to defendants to purchase hogs and stock; the hogs and stock were to be shipped to St. Louis, to Mulhall, who was to receive and sell them on account of the firm—Mulhall to receive

half the profits and sustain half the losses of the enter-prise. All the moneys so advanced by Mulhall were on account of the partnership, and were used for its purposes. Defendants deny that they are indebted to plaintiff in the sum of $1,816.25, or at all, but all the money mentioned in his account was his contribution to the said firm; that, on settlement, he would be entitled to the sum of $17,301.75, but that he received a much larger sum than is stated in his bill of items, the amount so by him received being in fact $15,690.40; that defendants expended large sums of money on the purchase and shipment of hogs, to wit, $18,001.14, and that they received, as the funds of said firm, the sum of $17,300, which is the sum Mulhall claims to have advanced to them; that the affairs of said partner-ship have not been settled, and cannot be settled in this proceeding; that, upon a settlement, Mulhall is chargeable with more than $15,690.40, because he pretended to sell lots of hogs to sundry persons, at low figures, less than their true and market value, and credited the firm only with such depreciated value, whereas he was, in truth, the purchaser of such lots, and resold them at large profits; that Mulhall has withheld the account of these transactions from defendants. The defendants filed with their answer an account of their expenditures for said firm, and asked for judgment and costs. This account showed hogs pur-chased amounting to $17,250.79, expenses, $558.90 plus $4.50; then, in addition, a further purchase amounting to $255.85, and $500 paid to Mulhall—total, $18,001.14.

Mulhall replied that he was not a member of the firm of S. L. Cheatham, or any other firm of which defendants were partners. He denied that he ever entered into arti-cles of partnership with defendants, or either of them. He denied that defendants ever purchased hogs or other stock on account of said pretended firm, and shipped them to St. Louis; denied that he was to receive or did receive

at St. Louis any such stock, or was to sell or did sell any such stock, as stated in the answer. He denied that the sums of money advanced by him were advanced on account of any such pretended partnership; and he denied in detail all the particular allegations made in the answer in this connection.

There was a trial, and the jury found for the defendants.

By the bill of exceptions a mass of evidence appeared, of which only the following need be quoted for the purpose of this decision:

" S. L. Cheatham testified that he resided in Lafayette county, Missouri; that in November, 1872, he brought a lot of stock here; met Mulhall, and he agreed to furnish Cheatham with the money wherewith Cheatham would buy hogs, send them to St. Louis to Mulhall for sale, and they would divide the profits and losses. They agreed to act as partners. This was November 2, 1872. The letter was produced, and was dated St. Louis, November 2, 1872, directed to Mr. Hall, banker, Lexington, Missouri, informing him that S. L. Cheatham was going to buy hogs for Mulhall, who would accept his sight drafts from time to time. Cheatham told Mulhall that he and Kelly were trading together. Kelly and Cheatham bought hogs and shipped them. The drafts were drawn in the name of S. L. Cheatham.

Kelly, who was examined, said that all he knew of the partnership was what he learned from Cheatham.

Mulhall testified that he had known Cheatham many years; that in November, 1872, he agreed to furnish him money to buy hogs; had entire confidence in Cheatham; never agreed to go into partnership with him; the idea of partnership never entered into witness' head; had no recollection of Cheatham mentioning Kelly's name. Kelly, in January, declared that he was partner of Cheatham. Witness never inquired of Cheatham as to the expenses incident to the

purchasing of hogs at any time; kept Cheatham posted as to the markets so that he could purchase hogs judiciously. In December, Cheatham asked witness for $500 to buy sheep; witness consented; after he came down, there was a balance due witness, and Cheatham asked to be allowed to retain it until his cattle fattened; witness consented. This was all the evidence that was relevant to the issue tried.

The court instructed the jury as follows, for the defendants:

"The jury are instructed that, if they believe from the evidence that plaintiff entered into an agreement or arrangement by which plaintiff, Mulhall, was to furnish money for the purchase of hogs, and that defendant Cheatham, or defendants Cheatham and Kelly, were to purchase the hogs and to ship them to plaintiff at St. Louis, and the plaintiff was to sell them, and that the profits or losses growing out of the transaction were to be divided, one-half to plaintiff, Mulhall, the other half to S. L. Cheatham, or to defendants Cheatham and Kelly; that the money advanced by plaintiff, and the hogs purchased and shipped by defendants, were done under and in pursuance of such agreement or arrangement, then such agreement and arrangement constituted a copartnership, and plaintiff cannot recover in this action, and the jury must find for defendants."

Plaintiff excepted to the giving of this instruction.

Plaintiff then asked, and the court refused, the following instructions, plaintiff excepting to the refusal:

"The jury are instructed that, unless the jury believe from evidence that Mulhall knew that Mr. James Kelly was to be his partner, and consented thereto, then they will find for the plaintiff the amount claimed in his petition."

"The jury are instructed that Mr. Mulhall cannot be charged as a partner with James Kelly and Stephen L. Cheatham, or either of them, without his knowledge or consent."

"Unless the jury believe from the evidence that both Cheatham and Kelly were partners with Mr. Mulhall, then they will find for the plaintiff."

The court then, of its own motion, gave the following instruction, plaintiff excepting:

"The issue which the jury has to try is whether the account sued on grew out of partnership transaction or not. And the court instructs the jury that, unless they believe from the evidence that plaintiff agreed with Cheatham to buy the hogs on joint account with him, or with him and Kelly, and divide the profits, or losses, as the case might be, they will find for the plaintiff the amount claimed, with interest at the rate of 6 per cent. from date of suit."

The jury found for defendants on May 16, 1873, and on May 19, 1873, plaintiff filed a motion for a new trial, assigning for reasons:

1. That the verdict was against evidence.

2. Because the jury disregarded the law and the evidence.

3. Because the court refused proper instructions asked by plaintiff.

4. Because the court gave improper instructions to the jury at the request of defendant and of its own motion.

5. Because the court permitted improper evidence to be given.

6. Because the court excluded proper evidence.

7. Because the court, on motion, refused to strike out irrelevant and redundant matter from the answer.

The court overruled the motion. Plaintiff excepted, and moved for a rehearing of the motion for a new trial; the court overruled that motion, and plaintiff excepted. The general term affirmed the judgment of the special term, and the plaintiff appealed to the Supreme Court, whence the cause was transferred to the St. Louis Court of Appeals.

1. Plaintiff sued defendants for the balance of cash advances. Defendants answered that they were partners of

plaintiff; that they had had transactions as such, and that they had paid out in the business upwards of $18,000; that the affairs of the partnership were unsettled, and could not be settled in this suit. Plaintiff replied, denying the partnership. The instructions given by the court, of its own motion, stated the issue neatly, and deduced the law as favorably for the plaintiff as he could under any circumstances claim. The instructions asked by the defendants, and given, were substantially the same. Both were unexceptionable expositions of the law applicable to the facts of this case.

2. The instructions asked by plaintiff were properly refused. From the first and second it seemed to be the idea of the plaintiff that, if he were not aware of the legal consequences of his acts, then those legal consequences would not attach; that, if he ignorantly entered into certain relations with the defendants, without a correct idea of the legal consequences of what he did, then those natural legal consequences were suspended. This surely cannot be seriously contended for.

The third instruction asked by plaintiff, and refused, declared that, unless both Cheatham and Kelly were partners of Mulhall, the jury must find for plaintiff.

Now, Mulhall had sued them both; obviously they both stood in the same relation to him, or else Kelly was not in any relation to him at all. Unless Kelly was a partner of S. L. Cheatham, and was comprehended in the firm known as "S. L. Cheatham," he was not answerable to Mulhall in any respect. Suppose the jury were of the opinion that Mulhall and Cheatham were partners and that Kelly was not connected with Cheatham; it would follow that, in any action touching these accounts between Mulhall and Cheatham, Kelly must be left out—having no connection with the matter—and that, Mulhall and Cheatham being partners, the one could not sue the other at law for a partnership transaction until the partnership accounts had been adjusted. To deduce from the establishment of a partnership between

Mulhall and Cheatham, to which Kelly was no party, a liability on the part of Kelly to one of the partners in respect of a matter in which he could only be involved by virtue of being the partner which he was declared, not to be, is very inconsequent. The court ruled correctly when it refused these instructions.

The judgment is affirmed, all the judges concurring.